IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| JASON PADDOCK, | Civ. No. 1:21-cv-5591 |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| PROSOURCE, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

COMES NOW the Plaintiff, Jason Paddock (hereinafter "Plaintiff"), by and through his attorneys of record, asserting claims against Prosource, Inc., and alleging as follows:

## NATURE OF THE ACTION

1. The present case arises out of a large multistate outbreak of *Salmonella* Oranienburg caused by onions distributed by Defendant Prosource, Inc.

2. In September 2021, Plaintiff Jason Paddock ate a steak taco meal containing Prosource, Inc. onions at El Norteño Restaurant in Island Lake, Illinois.

3. The onions consumed by Plaintiff Jason Paddock were contaminated with *Salmonella* bacteria.

4. As a result of consuming the contaminated onion product, Plaintiff developed a severe *Salmonella* infection requiring hospitalization.

## THE PARTIES

5. Plaintiff Jason Paddock is a resident of Illinois.

6. Upon information and belief, Defendant Prosource, Inc. is an Idaho corporation

1

with its principal place of business in Idaho.

7. Defendant Prosource is in the business of producing, processing, and distributing onion and potato products throughout the country, including into the State of Illinois.

## JURISDICTION AND VENUE

8. Subject matter jurisdiction in this matter is proper because the amount in controversy, exclusive of interest and costs, exceeds Seventy-five Thousand Dollars ($75,000.00) and the parties are citizens of different states, both as required by 28 U.S.C. § 1332(a).

9. Venue of this matter is proper in the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim set forth herein occurred in this judicial district.

## FACTUAL ALLEGATIONS
### *Salmonella* and Food Safety

10. *Salmonella* is a bacterium that occurs in humans and other animals and is shed in their feces.

11. When *Salmonella* is ingested by humans it can cause severe gastroenteritis called salmonellosis. Symptoms of salmonellosis include nausea, vomiting, diarrhea, and abdominal pain. Headache, myalgia, and low-grade fever may also accompany salmonellosis.

12. Symptoms typically develop within 6 to 72 hours after ingesting contaminated food or water. Symptoms usually last for several days but severe cases can last much longer and result in serious medical complications.

13. Long-term health issues in individuals who suffer from salmonellosis are well documented and include reactive arthritis, inflammatory bowel syndrome, and immunological

2

deficiencies.

14. In partnership with state health departments, the Centers for Disease Control ("CDC") actively monitors *Salmonella* cases throughout the country to identify outbreaks. Using sophisticated genetic typing technology known as Pulse Field Gel Electrophoresis (PFGE) and Whole Genome Sequencing (WGS), the CDC can detect when multiple Salmonella infections are caused by a genetically related strain of the bacteria. Public health investigators then use this data and interviews to pinpoint the source of a particular outbreak.

15. Because of the well-known risks to human health posed by the *Salmonella* bacteria, responsible food manufacturers take steps to prevent contamination of their food products and processing environments and to actively monitor the safety of their products.

**Prosource Promises Safe Food**

16. Prosource promised its retail customers and consumers that its onion products were safe.

17. According to Prosource's website, "ProSource is grower based and owned. Therefore, we have a responsibility to forge new and innovative ways to ensure product freshness and food safety. One major step towards this commitment is the creation and implementation of our own in-house, web-based food safety program." Available at: https://www.prosourceproduce.com/food-safety/.

18. Prosource's website does not provide any details about its "in-house" food safety program, or whether it complied with any food industry safety standards.

**Outbreak of *Salmonella* Oranienburg and Closure of Facility**

19. On September 2, 2021, the CDC identified multiple individuals sickened by a

3

*Salmonella* serotype known as Oranienburg.

20. The *Salmonella* Oranienburg outbreak grew rapidly, reaching 652 individuals in 37 states by October 18, 2021.

21. Sick individuals had illness onset dates ranging from May 31, 2021, to September 31, 2021, with the bulk of the illnesses occurring in August and September 2021.

22. PFGE and WGS analysis of samples obtained from ill individuals confirmed that they were sickened by a genetically distinct strain of *Salmonella* Oranienburg, indicating a common source of the illnesses.

23. As health departments interviewed sick individuals, 75% reported eating or maybe eating raw onions or dishes containing raw onion prior to becoming sick.

24. Some ill individuals also reported eating at the same restaurants, indicating illness clusters.

25. FDA began a traceback investigation based on the restaurant clusters, finding that the restaurants implicated shared a common distributor of onions, Prosource.

**Jason Paddock's *Salmonella* Infection**

26. On or about September 10, 2021, Plaintiff ate at El Norteño Restaurant in Island Lake, Illinois.

27. Plaintiff ordered and consumed steak tacos containing raw onions, guacamole, and cilantro.

28. The steak tacos purchased by Plaintiff contained contaminated onions distributed by Defendant Prosource.

29. On September 15, 2021, Plaintiff became violently ill with nausea, abdominal

4

cramps, and diarrhea.

30. Plaintiff sought care from Advocate Good Shepherd Hospital in Barrington, Illinois on September 15, 2021.

31. Plaintiff was admitted to the hospital, where he remained for five days while getting IV hydration, antibiotics, and pain relief until his fever broke.

32. During his hospitalization, Plaintiff tested positive for *Salmonella.*

33. Upon information and belief, the Illinois Department of Public Health has linked Plaintiff's *Salmonella* infection to El Norteño Restaurant and ultimately to the Prosource onion outbreak.

34. As a result of his hospitalization, Plaintiff missed work and was subsequently terminated.

35. As a direct and proximate result of consuming contaminated food prepared and served by Defendant, Plaintiff suffered a debilitating and painful gastrointestinal illness, was hospitalized, and incurred, and will incur, medical expenses, lost wages, and suffered other losses and damages to be proved at trial.

## COUNT I
### Strict Products Liability

36. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

37. Defendant manufactured, distributed, marketed, and sold the contaminated food that injured Plaintiff and caused her to become infected with *Salmonella*.

38. Defendant is in the business of manufacturing and selling food and drink products to the public.

39. Food and drink that is contaminated with *Salmonella* is unfit and unreasonably dangerous for its intended use of human consumption.

40. The food purchased by Plaintiff was contaminated with *Salmonella* when it left Defendant's control.

41. Plaintiff's consumption of Defendant's contaminated food was a direct and proximate cause of her infection and her subsequent injuries.

42. Defendant is strictly liable to Plaintiff for the harms caused by its manufacture and sale of an unreasonably dangerous and defective food product. Plaintiff has suffered and will continue to suffer significant physical and emotional injury, including medical expenses, lost wages, pain and suffering, and other damages to be proved at trial.

## COUNT II
## Negligence

43. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

44. Defendant manufactured, marketed, distributed, and sold food products to Plaintiff that were contaminated with *Salmonella*, a potentially life-threatening pathogen. As a result, the food sold to Plaintiff was unreasonably dangerous and unfit for human consumption.

45. Defendant owed a duty to Plaintiff to exercise reasonable care in order to minimize the risk of injury to others when manufacturing and selling its food products.

46. Specifically, Defendant owed a duty to its customers, as well as to all persons foreseeably put at risk of secondary transmission of the disease, to manufacture and sell food that was safe to eat, was not adulterated with deadly pathogenic bacteria, and that was not in violation of applicable food safety regulations.

47. Defendant also owed a duty to all of its customers, as well as to all persons foreseeably put at risk of secondary transmission of the disease, to maintain its premises in a sanitary and safe condition.

48. Defendant breached this duty through one or more of the following acts or omissions:

   a. Failing to prevent the transmission of *Salmonella* from its food and drink to the ultimate consumers of its products;

   b. Failing to properly operate its restaurant in a sanitary and safe manner;

   c. Failing to implement adequate food safety policies and procedures;

   d. Failing to adequately maintain and monitor the sanitary conditions of its food, drink, water, premises, and employees;

   e. Failing to properly train its employees on the prevention of transmitting potentially deadly pathogenic bacteria;

   f. Failing to properly supervise its employees and its agents to prevent the transmission of *Salmonella*;

   g. Storing, offering, and delivering food in violation of 410 ILCS 620/3.1 and 410 ILCS 620/3.4;

   h. Failing to maintain its premises in a clean, sanitary, and healthful manner in violation of 410 ILCS 650/1 and 410 ILCS 650/2;

   i. Failing to properly and carefully select and monitor the entities from which it purchased raw materials used in the production of its products; and

   j. Other acts and omissions to be proved at trial.

49. As a direct and proximate result of Defendant's conduct, Plaintiff sustained the injuries and damages set forth above.

## COUNT III
### Negligence *Per Se*

50. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

51. Defendant Prosource owed a duty to consumers, including Plaintiff, to abide by all applicable laws regarding food safety, and to use supplies and raw materials that complied with all applicable federal, state, and local food laws, ordinances, and regulations.

52. Defendant had a duty to comply with federal food laws, including 21 U.S.C.§ 331, and all of the rules, regulations, and policies promulgated pursuant to it. Defendant Prosource did not comply with these duties because it distributed and sold onions contaminated with *Salmonella*.

53. Under Illinois law, the fact that Defendant Prosource failed to comply with both federal and state legislative or administrative regulations is evidence that the Defendant breeched its duty of reasonable care and is negligence *per se*.

54. Plaintiff was in the class of people intended https://www.oftlaw.com/current-outbreaks/salmonella-outbreak-september-2021/ to be protected by applicable food safety laws. Failure by Defendant Prosource to comply with these laws and regulations was a direct and proximate cause of Plaintiff's injuries.

55. As a direct and proximate result of Defendant Prosource's negligence *per se*, Plaintiff suffered damages as set forth in this Complaint.

## COUNT IV
### Breach of Warranty

46. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

47. By offering food for sale to the general public, Defendant impliedly warranted that its food was fit for human consumption, was not adulterated with deadly pathogenic bacteria, and was safely prepared under sanitary conditions.

48. Defendant breached this implied warranty when it sold food to Plaintiff that was contaminated with *Salmonella* and was therefore unfit for human consumption.

49. As a direct and proximate result of Defendant's breach, Plaintiff suffered the injuries and damages listed above.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against the Defendant as follows:

a. For an award of compensatory damages, including damages against Defendant for medical and hospital expenses, pain and suffering, disability, lost wages, and other damages according to proof at trial in excess of Seventy-Five Thousand Dollars ($75,000.00);

b. For an award of punitive or exemplary damages against Defendant in excess of Seventy- Five Thousand Dollars ($75,000.00);

c. For reasonable attorney fees and costs;

d. For pre-judgment interest;

e. That the Court award Plaintiff the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

f. For such further and other relief this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all triable issues.

Respectfully Submitted,


By  /s/Bart B. Torvik
      Bart B. Torvik  (ARDC No. 6302166)
OFT Law PLLC
701 Main Street, Suite 204
Evanston, Illinois 60202
888-828-7087
bart@oftlaw.com

*Attorney for Plaintiff*